We'll proceed with the next case, case number four, United States v. Wiley. That's case 242744. We will hear from Mr. Shaw. Good morning, Your Honor, and may it please the Court, I'm Court Shaw on behalf of Mr. Wiley. At the time of this traffic stop, Mr. Wiley was going home. He lived across the street with his godmother, and he was parking at a lot across the street on a driveway that his godmother owned. And the briefing in this case hotly disputes this issue of abandonment. However, I want to focus more on the other exceptions that the government raised in its briefing and why when we look at those exceptions to the warrant requirement and when we dispense with those other exceptions, we can see why they do focus primarily on abandonment but why abandonment is not a very good argument here. One of the principal arguments that the government raises is the search incident to arrest. Here, if you watch the video, you can see that Mr. Wiley was never arrested. After he was parking his car on that driveway, he then opened it and then closed it, left, and then fled. At no point was Mr. Wiley arrested, and when the officer, after Mr. Wiley fled, then came back to the car, opened the car door, effectively searching it, he then found the gun. However, as Arizona began to clearly describe, it's about the proximity of the defendant to the item or the area that you're searching. Here, in this case, Mr. Wiley was nowhere near the car at the time of the search. And also, he was never arrested. The government also goes into some detail about the automobile exception, describing why it believes it was probable cause of items related to his offense fleeing in the car. However, there's no actual proof of that. In this case, Mr. Wiley fled the car, but there's no evidence about anything else that he had done before. Recall that this was not a high-speed chase. This was simply, when we watched the video, it's a little unclear exactly what's going on or why the officer is there at that particular moment. Presumably, it's for traffic violations, but we don't see Mr. Wiley's car until a few minutes into the video. There is no evidence of a high-speed chase, and when the officer opens the car, there's no description in his report of a order of marijuana, and then he finds the gun. Counsel, let me back up here. There's really—I'm conceptualizing this as two different searches, right? You have the first search, car disputed, whether it's abandoned, but it's in this area that is up for debate. While your client is fleeing, an officer opens the door and sees a gun. Now you're bringing up the smell of marijuana. That, to me, brings up what, in essence, is the second search, right, where the marijuana is found. Why do I need to care about that search if the marijuana was only used in sentencing and that's not subject to suppression? Well, I don't think you do, Your Honor, and I think the government is the one that brings that up. And quite frankly, the government doesn't—the officer doesn't describe the odor of marijuana in the initial search of the car. That's our principal problem with this case is the search of that car at the time after he flees because he's nowhere near the area, and we obviously dispute the issue of abandonment. And it doesn't necessarily fit in Arizona v. Gant then, but you have an officer approaching a car with tinted windows not knowing what's in it and someone fleeing, right? I mean, that has nothing to do with me, and maybe you're agreeing with me here with the smell of marijuana. There's other justifications, potentially, and Fourth Amendment exceptions. I'd say warrant requirement exceptions for a search like that. Yes, absolutely, Your Honor. And I think Arizona v. Gant, I mean, the classic fact pattern would be, you know, a person, a traffic stop, he has a warrant. They arrest him on that warrant. They can pat him down. Maybe he's got a bag on him. They can search that. You know, those are—that's the typical kind of thing when it comes to a search incident to arrest. Here, he's nowhere near the area. Now, I anticipate the government may argue a recent case that this court issued last week regarding a cousin of a search incident to arrest, which is the protective sweep issue, and that's Michigan v. Long. Now, the government doesn't actually cite Michigan v. Long. It's discussed somewhat briefly below. However, here, when it comes to a protective sweep, there needs to be two findings. There needs to be one of dangerousness and then a second of immediate control. Now, I think the problem with this issue of a protective sweep is that the underlying facts is inconsistent with the government's version regarding abandonment. So on the one hand, the government is alleging, well, he runs from the car. He wants nothing to do with the car. That's fair game then. We can then search it. But then when it comes to this argument hinted at as to protective sweep, they're saying, well, then he may come back to the car. We don't know if he'll come back. We've got to worry about officer safety and community safety because his family members are across the street. And so obviously, the government can discuss alternative legal theories as to exceptions to the Fourth Amendment. But I think that the problem is that they're essentially saying it's a heads-I-win, tails-you-lose argument. Isn't it? Okay, so it seems reasonable, no, though, for the officer to be concerned about whether or not there might be other people in the car. And so you have, you know, there's a case recently from the D.C. Circuit, right, United States versus Williams, about tinted windows. And during a stop, the driver, it's all tinted, and the driver lowers it a little bit. And the officer then knocks on the window and says, no, no, lower it more. And then the officer then was able to see into the car. Based upon that, that kind of precipitates observing things in plain view. And, you know, the person is then arrested. And then that was argued that the officer's insistence that the window be lowered is a search. And it seems very similar, and the D.C. Circuit said no, that that was fine, because the intrusion is so minimal, right, and you have these tinted windows that you're not supposed to have anyway, right, and there's kind of an element of you can't create a reasonable expectation of privacy when none exists. And so you can't use illegally tinting windows to create this reasonable expectation of privacy when they shouldn't have it. So it seems like the fact pattern here would fit more into that kind of analysis, where the intrusion is minimal. There's, you know, he shouldn't have tinted windows anyway. Without tinted windows, the officer would be able to see the gun in plain view. And so, you know, on balance, the officer also should be entitled to know whether or not there are any other people in the vehicle, given kind of what took place. So in—and I'm wondering what your response to that is, that, you know, based upon kind of this kind of balancing under Pennsylvania v. Mims and under U.S. v. Cherry, that this seems like something that's eminently reasonable for an officer to do in this situation. I think that gets to the point of what did the officer know at the time and what his rationale was for the opening of the door. Now—and I would, again, reiterate, that's the whole point of why there should have been an evidentiary hearing in this case, is to sort through that. But it's not—but the officer's subjective intent is not so relevant as much as kind of what a reasonable officer would have thought at the time, right? Right, but I think that that's—what the officer is—what a reasonable officer is supposed to do also needs to be considered with his credibility and what his perspective is and what his stated reasons are. So in some of the other cases that we've cited, especially that Chavez case from the Tenth Circuit, the court can consider the credibility of the officer and what his reasons were for considering the opening of the door here. And so the problem is that the officer—it was a quick movement, but there's no indication that that's what he thought was going to happen. I think that's speculation to some extent, and that would be the reason for an evidentiary hearing. If there aren't any other further questions, I would like to reserve a minute for rebuttal. Judge Whipple, anything else at this point? No, thank you. Okay, thank you. Thank you. We'll now hear from the government. Ms. McQuaid? Thank you. May it please the Court, Amanda McQuaid for the United States. The district court correctly denied the defendant's motion to suppress, his later motion to reconsider, and his request for an evidentiary hearing. This court should affirm. I understand, defendant. It's going to some alternative arguments here. I think there's a much easier way to resolve this case by going through a straightforward through abandonment and then remembering that at the end of the day, this vehicle needed to be moved. We have an unregistered vehicle obstructing public sidewalks and a street. And so I can get into the alternative arguments if you want, but instead I want to focus on the district court's abandonment. And briefly before that, there's no question here that probable cause supported both the traffic stop because of the dark tinted windows, and then again for his arrest because of the clear obstruction. You can hear the officers multiple times tell him to stay in front of the car. Instead, he flees immediately once the lights are on. Turning to the abandonment finding. My concern about abandonment here is that, you know, it's not like Edwards where the car was subject to a high-speed chase and crashes into other cars in the middle of the road and the person flees, right? We're talking about a person, we're talking about Mr. Wiley, that actually parked his car where he typically parks. Then he gets out of the car. Before the officers tell him anything, he gets out of the car, closes the door, turns around, and then the officer announces their presence and talks to him. It seems to me that he was just parking. And if you park a car, you're not abandoning it. And so I'm wondering what your best facts are that Mr. Wiley was abandoning the car in these circumstances. Sure. I think it's important to remember that this is a reasonable test. We're looking at what the officers see in an objectively reasonable person. Here, the parking job in itself is not complete because of the sidewalk and the clear obstruction to the road still. But flight is a very important factor. This court's precedent is very clear that flight is a very important factor. But it didn't seem to me, at least from the video, that he was fleeing as he was getting out of the car. He got out of the car, he closed the door, the officer addressed him, and then he fled. I think there's some debate to that because of when the lights turn on. You can see the lights starting to reflect as the officers approach on the dash cam. You can see the lights turn on before he gets out of the vehicle. And so there's an extent to where we're getting into the subjective intent of, like, is he seeing them? When are we seeing them? Because of the dark tinted windows, obviously we can't know for sure. But I think it's also dispositive that he's fleeing away from any kind of structure. Defendant later says he lives across the street, but he's not trying to go across the street. He's not trying to go to a different house. He runs behind lots near a railroad track. And so we have this intent, and then you add to his statements later that he knows it's a condition of his bond and his probation to avoid any officer conduct. So his main intents here, once we have these statements and these expressions later on, is that he doesn't care about the car anymore. He wants to avoid police conduct, and he doesn't want contact with the troopers. And I think those statements in combination with the flight and the fact that this isn't his residence, he's not trying to go home, or at least based off of defendant's later statements that he lives across the street, he runs in the opposite direction towards railroad tracks. So flight here is very important, and I think in combination with the statements that, one, he's on probation and can't be around the troopers, and, two, that he hasn't even purchased the vehicle yet. He's test driving it. He wants to maybe own it, I think is the best that we can get from his statements. And so abandonment is not unlawful or it's not impermissible for any reasonable person there to understand that he's trying to just get away. And his later statements that he wants this car back doesn't negate the fact that he fled in the first place for Fourth Amendment purposes. And then regardless of abandonment, again, at the end of the day, this car has to move. And because defendant is arrested and there's this obstruction to the public sidewalk and the public street, and then the BMW is uninsured, there's nobody at the scene who can move this vehicle. Is there any evidence of ISP's inventory policy in the record here? It's not in the record. It is generally public knowledge. It is publicly available. I know this court has cited to the explicit number that's from the ISP's website multiple times throughout the decades. But I think more of- But haven't we also said the government needs to produce an inventory policy if they're relying on inventory search? That is true. I think it is also clear from the party's briefs here that we're not disputing that the policy was not followed to the extent, but really whether or not it was needed to be followed in the first place. Defendant, in our brief as well, we cite to all the statutory authority, which clearly provides the outer bounds of when a policy would even be started and when it would begin the policy. And here the statutory requirements are very clear that this is a circumstance where the troopers can impound the vehicle, and they properly did. Didn't Mr. Wiley's relatives offer to move the car so that it could be out of the way of the highway? I'm not sure they offered so much as Wiley asked them to. He states, go get my car. And the officers told them they can't touch the car. Correct. And I think there are two- So it's kind of hard to argue that this vehicle was unintended, it seems to me, in that form, when the officers are the ones that forced it to be unintended, so to speak. I could see how you could get there under the circumstances. But again, we have to consider the fact that we don't know who owns this vehicle. Indeed, when they run the VIN registration, we find out that it's a completely different individual from Kentucky who owns this BMW. So had we gone through with what defendant wanted, we would have opened up so many new cans of worms here about liability. And I think some of that discussion happens with the relatives, you can hear in multiple videos, that it could be abandoned property, it could be all sorts of liability issues. But more importantly, the troopers can't release an unregistered, uninsured vehicle to these other third parties, who we still don't really know their identity at the time, to move a vehicle. They're creating then another traffic violation because you can't lawfully move a vehicle that's unregistered anyway. So at the end of the day, the car is getting moved by towing. Nobody else at the scene is going to do that. And to be completely reasonable, to justify the tow, you then have to open the door to one insurer. There's nobody else in there. There's multiple discussions that the car is still running, so they're at least going to have to turn the car off to tow it, and then you see the pistol in plain sight. And so at the end of the day, regardless of abandonment findings, this car is getting moved, and it's not getting released to these three individuals. As for the evidentiary hearing, there is no need for an evidentiary hearing. The video evidence here is very clear. To the extent that there would be a discrepancy between the written reports and the video, the video is clearly the best evidence. Also, I believe in the briefing, defendant points out that there might have been a discrepancy with the tenting traffic violation in the report, but it is in the report. It's on page 12. There's a brief note. It's the ISP's firearm submission. This is a docket record 37-4. And in the box, the trooper is describing how they came into possession of the firearm, and it in part says because of a traffic stop for illegal window tenting and speeding. So even if there was a dispute between those records, it's our position that there is not one, and it was not needed for an evidentiary hearing. So unless there are further questions. When did the court actually have access to the officer's report? There were portions of the report in our initial response to the motion, but absent that, it wasn't until the 31-day marker after his order issued that defendant supplied the rest of the reports that he thought was at issue. I see. Thank you. Thank you. Treshelle? Just two points in rebuttal. The government makes a big point about the way the car was parked and the area that it was in. In United States v. De Guay that we discussed at length, it specifically describes that courts are not supposed to, or sorry, police are not supposed to use general caretaking functions in order to impound vehicles, and we believe that that's essentially the argument here. And then as to some of the statements that the government is relying on from my client, the focus needs to be on what the officer knew at the time when he conducted his search. And so the statements, all of that occurs afterwards when he's in custody. And it's also ambiguous, too, because he describes getting my car, and then his family is obviously there to move it. And honestly, the car could have just been moved a few feet, and then it would have been fine. So we ask the court to reverse, to suppress, or for an after-judge hearing. Thank you. Thank you. The case will be taken under advisement.